UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES, *ex rel.*, <br> THOMAS O'NEILL MORGAN, <br><br> Plaintiff-Relator, <br><br> v. <br><br> SCIENCE APPLICATIONS <br> INTERNATIONAL COMPANY, *et al.*, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 05-1757 (RMC) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM OPINION**

Thomas O'Neill Morgan instituted this suit in September 2005, alleging that Science Applications International Co. ("SAIC") and SPARTA, Inc. ("SPARTA"), both federal contractors, violated the False Claims Act, 31 U.S.C. § 3728 *et seq.* ("FCA"). After years of impossibly slow investigation, the United States declined to intervene in June 2008. Although represented by counsel when the complaint was filed and throughout the investigation, Mr. Morgan has been proceeding *pro se* since September 2008, when prior counsel withdrew. He now has informed the Court that he has not located counsel since then and will no longer seek counsel. *See* Pl.'s Notice Advising Ct. of Status of Counsel [Dkt. # 50]. Because an individual cannot represent the United States *pro se*, and the Relator in an FCA case stands in the shoes of the federal government, the Court must dismiss Counts I-X and XII of the Complaint. As to Count XI, which alleges retaliation by both Defendants based on Mr. Morgan's whistleblower activity, SPARTA has filed a motion to dismiss for failure to state a claim, which Mr. Morgan opposes.

The Complaint does not allege that SPARTA was Mr. Morgan's employer or that

SPARTA and SAIC were joint employers. The Court has re-read the 862-paragraph Complaint in its entirety, noting that it was prepared by counsel for Mr. Morgan, and could find very little that offers any support for a joint employer finding, which is what Mr. Morgan argues, in other terminology, in his Opposition. Because there was not an employer-employee relationship between Mr. Morgan and SPARTA, and because SPARTA cannot be sued by Mr. Morgan *pro se* on the FCA allegations, SPARTA's motion to dismiss will be granted.

## I. FACTS

As noted above, the Complaint is long and detailed, quite beyond notice-pleading requirements. The Court will summarize briefly the points that are relevant to disposition of the pending motion.

Thomas O'Neill Morgan is a former Senior Scientist at SAIC. He began work there on May 17, 2004 as a member of the Black Team providing support to the Missile Defense Agency, a component agency of the Department of Defense. Compl. ¶¶ 1-2, 64. SAIC employed Mr. Morgan to assist on federal contracts it maintained with the Missile Defense Agency. *Id.* ¶ 2. "Mr. Morgan was hired by SAIC to provide the government with budgetary and technical expertise based on his more than twenty years of post doctorate experience in missile defense." *Id.* ¶ 15. SPARTA also provided support to the Missile Defense Agency pursuant to federal contracts and often drew on the resources of SAIC to fulfill its obligations under its contracts. In this relationship, SPARTA was the prime contractor with the Missile Defense Agency and SAIC was the sub-contractor. *Id.* ¶ 57. Mr. Morgan was initially hired by SAIC to assist with two of these sub-contracts. *Id.* ¶ 53. He reported directly to SAIC's Area Manager, Bien Vu. *Id.* ¶ 58.

The Missile Defense Agency organizes technical expertise around several color-coded

working groups and hires outside experts to staff these teams. *Id.* ¶ 16. The Black Team was organized to provide guidance regarding allocation of resources and determinations of how to handle problems in missile defense technology. *Id.* ¶ 17. Mr. Morgan was hired to serve as liaison between the Black Team and the Government. *Id.* ¶ 22. Over time, Mr. Morgan "discovered that SAIC and SPARTA supervisors were primarily concerned with securing business and using contract funds to benefit their companies, often at the expense of fulfilling the companies' obligations to the Government." *Id.* ¶ 23. The bulk of the Complaint consists of former counsel's efforts to detail these allegations.

The Complaint never alleges that SPARTA was Mr. Morgan's employer. It does allege that in July of 2004, Mr. Morgan met with Mr. Vu, Dennis Nihiser, the contracting authority for the Government, and Paul Krause, a SPARTA employee who acted as Mr. Nihiser's Deputy and Budget Manager. *Id.* ¶¶ 65, 68. Mr. Nihiser assigned the duties of Black Team Administrative Lead to Mr. Morgan. *Id.* ¶ 66.

> After receiving his new assignment, Morgan met Vu and Krause to discuss the color-coded teams' budgets. Krause began the meeting by handing Vu a sheet of paper with his proposed budgets. . . . Krause indicated that Morgan was to use these estimates and prepare the budget submission, under Morgan's authority as the administrative lead.

*Id.* ¶¶ 72-73, 76. However, when Mr. Morgan prepared the budget as he believed it should be done, it was rejected twice and "Vu told Morgan to use the funds exactly as allocated by Krause." *Id.* ¶ 86.

Mr. Morgan also alleges that Mr. Vu assigned him tasks of working for SPARTA's benefit. *See, e.g., id.* ¶¶ 289-322. For example, Mr. Morgan contends that "SAIC allowed SPARTA to use Morgan's resume to help obtain a contract." *Id.* ¶ 325. David Beerman, SPARTA's Contract

Manager, directed Mr. Morgan to prepare the resume and then included it with a list of qualified personnel SPARTA would use to perform on a government contract. *Id.* ¶¶ 326-27. In addition, Mr. Morgan alleges that SPARTA and SAIC personnel shared office space at 1911 N. Fort Meyer Drive in Arlington, Virginia, through a sublet of space by SAIC from SPARTA. *Id.* ¶¶ 348, 350.

After pages of detailed allegations that Mr. Morgan asserts show that SAIC knowingly and intentionally produced shoddy work on its contract with the Missile Defense Agency, he alleges that he "repeatedly complained to management both at SAIC and SPARTA, the prime contractor for SAIC relation[ship] with [the Missile Defense Agency], regarding the quality of the work performed. Nonetheless, SAIC continued to willfully and recklessly bill the [Missile Defense] Agency for work that it knew was not correct." *Id.* ¶¶ 730-31. When he discovered the Defendants' alleged fraudulent business practices, Mr. Morgan "began to openly question their commitment to ethical and legal standards." *Id.* ¶ 740. Aside from confronting Mr. Vu several times about these indiscretions, he also began to express his concerns to Mr. Beerman. *Id.* ¶ 741.

Then, in November of 2004, after numerous complaints by Mr. Morgan regarding the Defendants' business practices, Mr. Beerman and Mr. Vu removed Mr. Morgan from a Threat System Engineering project which was assigned to Mr. Morgan by the Missile Defense Agency National Team Chairman, Gordon Niva. *Id.* ¶ 742. Mr. Morgan complained to Messrs. Vu and Beerman, pleading that their actions were "unethical . . . because SAIC was withholding the services it had contracted with the [Missile Defense Agency] to provide." *Id.* ¶ 745. When Mr. Morgan confronted Mr. Beerman directly about his unethical actions which caused SAIC to provide "shoddy and substandard" work, Mr. Beerman told Mr. Morgan to keep that information "among our circle . . . [,] which Morgan interpreted at the time as meaning not to report it to the [Department of

Defense] Inspector General, or anyone else who could take action." *Id.* ¶ 747. Despite this instruction, Mr. Morgan added a note to his weekly report that he had been removed from a government assigned activity "for reasons of SAIC billing." *Id.* ¶ 748. Upon reviewing the report, Mr. Vu directed Mr. Morgan to remove the statement. *Id.* ¶ 749.

Shortly before a meeting that Mr. Niva, the Missile Defense Agency National Team Chairman, had directed Mr. Morgan to attend, Mr. Beerman notified Mr. Niva that Mr. Morgan had been replaced but gave no reason. *Id.* ¶ 750. In response, Mr. Morgan sent an email to Mr. Beerman, "stating that SAIC's and SPARTA's assignments of his time amounted to fraud in managing its contract, and that SAIC was more interested in its employee bonus program than it was in providing the government with a legitimate service." *Id.* ¶ 754. According to the Complaint, Mr. Beerman showed the email to Mr. Vu and to Lee Phillips of SAIC. *Id.* ¶ 755. Lee Phillips then promptly called Mr. Morgan in for a meeting and told him that he could either resign immediately or be fired. *Id.* ¶ 757. Fearing that getting fired would harm his reputation, Mr. Morgan reluctantly resigned. *Id.* ¶ 756.

Count XI of the Complaint alleges that Mr. Morgan "was replaced on a project and then fired for complaining about SAIC's business practices." *Id.* ¶ 852. It further charges that Mr. Morgan "has suffered employment related damages pursuant to 31 U.S.C. Section 3730(h) as he was fired for engaging in whistleblower activity." *Id.* ¶ 853.

## II. LEGAL STANDARDS

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement

of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A complaint must be sufficient "to give a defendant fair notice of the claims against him." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007). Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (internal citations omitted). Rule 8(a) requires a "showing" and not just a blanket assertion of a right to relief. *Id.* at 1965 n.3.

A court must treat the complaint's factual allegations as true, "even if doubtful in fact," *id.* at 1965, and must draw all reasonable inferences in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003). Even so, the facts alleged "must be enough to raise a right to relief above the speculative level," *Twombly*, 127 S. Ct. at 1965, and the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). "[A] complaint needs *some* information about the circumstances giving rise to the claims." *Aktieselskabet Af 21. Nov. 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 16 n.4 (D.C. Cir. 2008) (emphasis in original).

In deciding a Rule 12(b)(6) motion, the Court may consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citation omitted). Once a claim has been stated adequately, "it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 127 S. Ct. at 1968-69.

## III.  ANALYSIS

SPARTA first moves to dismiss Counts I-X and XII of the Complaint because there is no reasonable possibility that Mr. Morgan will obtain new counsel.  A lay person is not qualified to represent the United States in a *qui tam* action.  *See Rockefeller v. Westinghouse Elec. Co.*, 274 F. Supp. 2d 10, 16 (D.D.C. 2003), *aff'd*, No. 03-7120, 2004 WL 180264 (D.C. Cir. Jan. 21, 2004).  Because the Relator in an FCA case stands in the shoes of the federal government as a plaintiff, the Relator may not proceed *pro se*.  Since SPARTA's filing of its motion to dismiss, Mr. Morgan notified the Court that he has been unable to retain new counsel and requested that the Court proceed to the merits of his case.  The Court therefore must dismiss Counts I-X and XII of the Complaint.

SPARTA also seeks dismissal of Count XI, to the extent it might be read to charge SPARTA with violating Mr. Morgan's rights as a putative whistleblower, because SPARTA was not Mr. Morgan's employer.  Mot. to Dismiss of SPARTA, Inc. ("Def.'s Mem.") at 3 [Dkt. # 28].  The False Claims Act provides in relevant part:

> Any employee who is discharged . . . or in any other manner discriminated against in the terms and conditions of employment by his . . . employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under [the False Claims Act], including the investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under [the False Claims Act], shall be entitled to all relief necessary to make the employee whole.  Such relief shall include reinstatement with the same seniority status. . . .  An employee may bring an action [in district court] . . . for [relief].

31 U.S.C. § 3730(h).  As SPARTA points out, the statute prohibits retaliation by an employer against an employee for engaging in a wide range of protected activity.  Only a whistleblower's employer, however, is subject to liability for retaliation or discrimination under section 3730(h).  Thus, if

SPARTA were not Mr. Morgan's employer it would be an improper defendant even if SAIC subcontracted with and worked closely with SPARTA on projects to which Mr. Morgan was assigned. *See U.S. ex rel. Chandler v. Hektoen Institute for Medical Research*, 35 F. Supp. 2d 1075, 1087 (N.D. Ill. 1999) (plaintiff alleged, "[a]t best," a conspiracy between a county hospital and plaintiff's employer, a medical research institute, to remove certain matters from the plaintiff's responsibilities as project director of a research study jointly administered by the hospital and the research institute, but liability under § 3730(h) does not extend to non-employers on the basis of a conspiracy); *Mruz v. Caring, Inc.*, 991 F. Supp. 701, 709 (D.N.J. 1998) ("the hallmark of liability under section 3730(h) is an 'employment relationship,'" and non-employers may not be held liable under the *qui tam* statute for retaliatory employment actions even if they conspired with the employer to discharge or discriminate against a whistleblowing employee; had Congress wanted to extend liability to non-employers, it could have done so, as it did in § 3729); *see also Vessel v. DPS Associates of Charleston, Inc.*, 148 F.3d 407, 412 (4th Cir. 1998) (liability under *qui tam* statute does not extend to subcontractor employees or to independent contractors); *Palladino ex rel. U.S. v. UNA of Southern New Jersey*, 68 F. Supp. 2d 455, 464-65 (D.N.J. 1999) (claim against non-employer was dismissed with prejudice for failure to state a claim).

Count XI is clear: it alleges that Mr. Morgan suffered damages because he was fired by SAIC for engaging in whistleblower activity. Compl. ¶ 853. It does not allege that he was fired by SPARTA. *See id.* ¶¶ 851-54. Although neither Count XI specifically, nor the Complaint in its entirety, alleges that Mr. Morgan was fired by SPARTA, Count XI does state that, in addition to being fired by SAIC, Mr. Morgan "was replaced on a project . . . for complaining about SAIC's business practices," *id.* ¶ 852. The Complaint arguably alleges that Mr. Morgan was removed from

the project by Mr. Beerman, SPARTA's Contract Manager, and that the removal damaged Mr. Morgan's reputation, *see id.* ¶¶ 750-54, but there is no indication anywhere in the Complaint that SPARTA and Mr. Morgan ever had an employer-employee relationship. The factual allegations in the Complaint simply fail to allege that SPARTA's role in Mr. Morgan's work for SAIC rendered it a joint employer. Thus, Count XI must be dismissed as against SPARTA.[1]

### IV. CONCLUSION

Counts I through X and Count XII, which advance allegations of FCA violations against SPARTA and SAIC, will be dismissed because Mr. Morgan cannot represent the United States without counsel. SPARTA's motion to dismiss Count XI, which alleges retaliatory termination of employment, will be granted and the suit against SPARTA will be dismissed. A memorializing order accompanies this Memorandum Opinion.

Date: April 3, 2009  /s/
ROSEMARY M. COLLYER
United States District Judge

---

[1] Mr. Morgan presents an e-mail from SPARTA's counsel threatening to request that the Court order Mr. Morgan to pay SPARTA's reasonable attorneys' fees and expenses in defending this matter. *See* Pl.'s Opp'n to Mot. to Dismiss of Sparta, Ex. C-1. The Court dismisses SPARTA from this case because it never had an employer-employee relationship with Mr. Morgan. The Court does not, and because the case against SPARTA never reached the discovery phase, cannot make any factual conclusions regarding the basic allegations of retaliation against Mr. Morgan by certain SPARTA employees. The Court therefore does not conclude that Mr. Morgan's claims against SPARTA are frivolous, vexatious, or brought for the purpose of harassment. Mr. Morgan will not be required to pay SPARTA's attorneys' fees. *See* 31 U.S.C. § 3730(d)(4).