UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| THOMAS O'NEILL MORGAN, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 05-1757 (RMC) |
| SCIENCE APPLICATIONS INTERNATIONAL CORPORATION, *et al.*, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM OPINION**

Thomas O'Neill Morgan filed this case under the False Claims Act ("FCA"), 31 U.S.C. § 3729, in 2005. The Government took an extended period of time to investigate and determine that it did not want to intervene, which it did in 2008. At that point, Mr. Morgan's counsel withdrew. He searched for new counsel without success. Since Mr. Morgan cannot proceed *pro se* on the FCA counts in the Complaint, they have been dismissed. *See* Dkt. # 57. What remains is a single retaliation count against his former employer, Science Applications International Corporation ("SAIC"). SAIC moves the Court to stay the case and compel Mr. Morgan to arbitrate. *See* Dkt. # 53. Mr. Morgan resists. However, he signed a "Mutual Agreement to Arbitrate Claims" ("Arbitration Agreement") and must comply. Therefore, the case will be stayed and Mr. Morgan ordered to proceed to arbitration.

**I. BACKGROUND**

Mr. Morgan began working at SAIC on May 17, 2004. He signed the Arbitration

Agreement on May 10, 2004.  According to the specific terms of the Arbitration Agreement:

> SAIC and Employee will settle by arbitration all statutory, contractual and/or common law claims or controversies ("claims") that SAIC may have against Employee, or that Employee may have against SAIC or any of its officers, directors, employees or agents in their capacity as such or otherwise.  Claims subject to arbitration include (i) claims for discrimination (including, but not limited to, age, disability, marital status, medical condition, national origin, race, retaliation, sex, sexual harassment or sexual orientation); (ii) claims for breach of any contract or covenant (express or implied); (iii) claims for violation of any federal, state or other government law, statute, regulation or ordinance; and (iv) tort claims (including, but not limited to, negligent or intentional injury, defamation and termination of employment in violation of public policy).

SAIC Mem., Arbitration Agreement ¶ 1 [Dkt. # 53].

Mr. Morgan was terminated by SAIC on December 8, 2004.  He thereafter filed his FCA Complaint on September 2, 2005.  The Complaint includes Count 11, which alleges retaliatory termination of employment in violation of 31 U.S.C. § 3730(h).

## II.  LEGAL STANDARDS

The public policy of the United States generally favors arbitration.  *Pearce v. E.F. Hutton Group, Inc.*, 828 F.2d 826, 829 (D.C. Cir. 1987) ("the federal policy favoring arbitration counsels that doubts about the intended scope of an agreement to arbitrate be resolved in favor of the arbitral process"). Under the Federal Arbitration Act ("FAA") a written provision requiring arbitration of any controversy arising under a contract or transaction affecting commerce is valid and enforceable.  9 U.S.C. § 2.  Where such a written agreement exists, a district court must, upon application of a party to the agreement, stay any proceeding pending arbitration in accordance with the written agreement.  *Id*. § 3.  The FAA requires that when a court is presented with a dispute that is covered by an arbitration agreement, the court must order the parties to proceed to arbitration in

accord with the terms of their agreement. *Id.* § 4.

Under the FAA, statutory claims may be subject to an arbitration agreement. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). However, a party bringing a statutory claim will not be compelled to arbitrate his claim if doing so would require him to forego substantive rights afforded under the statute. *Id.* at 26. Arbitration will be compelled only in those circumstances in which a claimant "effectively may vindicate [his or her] statutory cause of action in the arbitral forum." *Id.* at 28 (citation omitted) (alteration in original).

There are five factors to consider in determining whether an arbitration agreement meets the requirements of *Gilmer*: whether the arbitration agreement at issue (1) provides for neutral arbitrators; (2) provides for more than minimal discovery; (3) requires a written award; (4) provides for all types of relief that would otherwise be available in court; and (5) does not require an employee to pay either unreasonable costs or any arbitrator's fees or expenses as a condition of access to the arbitral forum. *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1482 (D.C. Cir. 1997).

### III.  ANALYSIS

In the instant case, there is no doubt that Mr. Morgan executed the Arbitration Agreement on May 10, 2004, and that he is fully competent to understand its terms. He argues, however, that it would limit his rights in important ways compared to court litigation. Where parties dispute the scope of an arbitration agreement, public policy weighs in favor of arbitration. *See Pearce*, 828 F.2d at 829. At the same time, a statutory claim like that asserted here will not be subject to arbitration if the agreement requires a claimant to give up substantive rights he would have had under the statute. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. at 26. Arbitration will be compelled only in those situations in which it will allow each party the opportunity to fully vindicate

his statutory rights. *Id.* at 28.

Pursuant to the Arbitration Agreement at issue here, the arbitration procedures are those established by the SAIC Employment Arbitration Rules and Procedures, which are referenced in the Arbitration Agreement and made part thereof. Arbitration Agreement ¶ 4. Under those rules, the arbitrator is a neutral selected by the parties from a list or lists proposed by the American Arbitration Association ("AAA"). There is limited discovery (2 depositions) but a party may seek leeway for more discovery from the arbitrator. The arbitrator is required to issue a written award and s/he can order a full range of remedies. Finally, only if the employee initiates the arbitration does s/he have to pay a $150 fee; SAIC covers the balance of the AAA filing fee and all other fees, costs and expenses of the arbitrator and AAA for administering the arbitration. *Id.* ¶ 5 ("If Employee initiates the arbitration, Employee shall deliver to SAIC with the written notice of arbitration a check payable to SAIC in the amount of $150.00."). When, as here, SAIC calls for arbitration, the employee is not required to pay any costs. Thus, the Arbitration Agreement meets each of the five requirements of *Cole v. Burns International Security Services*.

Finally, the arbitration rules say that if on the date an arbitration request is received by SAIC, "any claim, if asserted in a civil action, would have been barred by the applicable Statute of Limitations, then the claim shall be deemed barred for purposes of arbitration." SAIC Employment Arbitration Rules & Procedures ¶ 1 [Dkt. #53]. Mr. Morgan followed the required procedures of the FCA in advancing his claims against SAIC and his claims that the corporation violated the FCA would not be subject to arbitration inasmuch as an FCA relator stands in the shoes of the United States and the United States has not agreed to arbitrate FCA claims. Only because he cannot proceed *pro se* on the FCA claims is Mr. Morgan left with a single claim of retaliation, which is subject to

arbitration as that claim is only between him and SAIC.  His timeliness, however, cannot be gainsaid.  The FCA has a six-year statute of limitations which had barely begun to run when Mr. Morgan filed suit and which had not been exhausted when SAIC demanded arbitration, much less even now.

### IV.  CONCLUSION

For the foregoing reasons, the Court grants Defendant's Motion to Compel Arbitration.  A memorializing Order accompanies this Memorandum Opinion.


Date: May 8, 2009                                            /s/
                                           ROSEMARY M. COLLYER
                                           United States District Judge